DECISION.
{¶ 1} Appellant Taun D. Todd was found guilty of aggravated robbery, felonious assault, and robbery, along with the firearm specifications accompanying each offense. The trial court sentenced him to nine years' incarceration for the aggravated robbery, merged that offense with the robbery for purposes of sentencing, and imposed a seven-year sentence for the felonious assault. The trial court ordered the sentences to be served consecutively. It imposed a three-year sentence on the second specification to the aggravated robbery, merged that specification with the first, and ordered the three-year sentence for the felonious-assault specification to be served concurrently with the three-year term imposed for the aggravated-robbery specification. The aggregate sentence was nineteen years.
{¶ 2} Todd and two of his cohorts attempted to rob Doris Ruff at gunpoint at her clothing store located in the Over-the-Rhine section of Cincinnati. Ruff and Todd knew each other. In fact, Ruff and Todd's father had been involved in drug transactions that ultimately resulted in Ruff's going to prison some time after the robbery attempt. During the attempted robbery, Todd pistol-whipped Ruff about her head. The would-be robbers ran from the store when Todd's gun accidentally fired. Ruff identified Todd as one of the robbers and as her assailant.
{¶ 3} Todd raises three assignments of error. First, he contends that the trial court erred by excusing a potential juror because the state's peremptory challenge was based on the juror's race. Second, he challenges the weight and the sufficiency of the evidence supporting his convictions. Third, he asserts that the trial court improperly sentenced him.
{¶ 4} Todd's first assignment raises a claim of discrimination in jury selection under Batson v. Kentucky.[1] He specifically challenges the state's reason for using a peremptory challenge to exclude a prospective juror who was an African-American woman. Todd is African-American. Batson establishes a "three-part process for evaluating claims that a prosecutor used peremptory challenges in violation of the Equal Protection Clause. First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. * * * Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. * * * Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination."[2]
Todd's challenge is based on the second step, asserting that the state's reason was nothing more than a self-serving comment.
{¶ 5} The assistant prosecutor claimed that the potential juror believed that her ex-husband was a "super cop" and that comment, along with the fact that he was her ex-husband, indicated to the assistant prosecutor a mistrust of what police officers "have to say." The transcript indicates that the prospective juror said that she had a cousin who was a police officer and that her ex-husband was a police officer. When the assistant prosecutor asked, "And your ex-husband is not some super cop, right? Just a regular human being?", the juror responded, "Well, he thinks he is, but, yes." The prospective juror also stated that she would not give a police officer's testimony less weight because her ex-husband thought he was a "super cop."
{¶ 6} The trial court found the assistant prosecutor's race-neutral explanation to be credible. The state's reason is to be deemed race-neutral unless discriminatory intent is inherent in the explanation.[3] The state offered a race-neutral reason. The trial court's conclusion that Todd had failed to prove that the state had excused the potential juror because of her race was not clearly erroneous.[4] We conclude that the trial court did not err in overruling Todd's objection to the peremptory challenge.
{¶ 7} In his second assignment, Todd challenges the weight and sufficiency of the evidence supporting the verdicts finding him guilty of aggravated robbery, robbery, and felonious assault. This assignment requires two different standards of review because "sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."[5] Sufficiency is a test of adequacy, and a challenge to the sufficiency of the evidence requires us to determine whether the evidence was legally sufficient as a matter of law to sustain the verdict.[6] We must determine "whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[7]
{¶ 8} In contrast, a weight-of-the-evidence review requires us to sit as a thirteenth juror and determine whether we disagree with the "factfinder's resolution of conflicting testimony."[8] In that situation, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether the trier of fact lost its way and created a manifest miscarriage of justice when it resolved conflicts in the evidence.[9]
{¶ 9} To obtain a guilty verdict for aggravated robbery, the state had to prove in this case that Todd had a deadly weapon on his person or under his control and either had displayed or had brandished it, indicated that he had possessed it, or used it while attempting or committing a theft offense against Ruff, or while fleeing from the theft offense or attempted theft offense against her. To obtain a guilty verdict for robbery, the state had to prove that Todd had inflicted, had attempted to inflict, or had threatened to inflict physical harm on Ruff while attempting or committing a theft offense or in fleeing immediately after the attempt or commission of the theft. To obtain a guilty verdict for felonious assault, the state had to prove that Todd knowingly had caused or attempted to cause physical harm to Ruff by means of a deadly weapon or ordnance.
{¶ 10} The testimony of Ruff established that Todd and two other men dressed in dark clothing and wearing scarves with eye cut-outs over their faces rushed into her store and brandished guns. One of the men demanded that she "give it up." When she indicated that she had nothing to give up, the man directed Todd to take Ruff into the backroom of the store. She struggled with Todd. His scarf fell and she called out his name. He then beat her over the head with his gun, causing her to bleed. The gun fired, and the men ran from the building.
{¶ 11} Robert Hankins was walking home when he observed Todd and two others come around the corner with scarves pulled down from their faces and carrying guns. Hankins heard Ruff yell that she had been robbed. He went around the corner where he had seen the men walking and saw Todd and the other two men emerge from a building wearing different clothing. Ruff recognized Todd because she had known him his entire life and had been married to his uncle. Hankins recognized Todd because he knew him from seeing him in the neighborhood. We conclude that the state sufficiently proved the elements of aggravated robbery, robbery, and felonious assault.
{¶ 12} There was no forensic evidence to establish Todd's guilt. Thus, Todd's conviction rested on whether the jurors believed Ruff and Hankins. Todd's attorney impeached Ruff's credibility by demonstrating that she had served several sentences for drug-related crimes and that she blamed Todd's father for her most recent conviction. He also demonstrated inconsistencies in other witnesses' testimony. But the jury "is the sole judge of the evidence and the credibility of the witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest."[10] Obviously, the jury was entitled to believe that Ruff was telling the truth about Todd's conduct, even if she was a convicted felon with a grudge against his father. We conclude that the jury did not create such a manifest miscarriage of justice that Todd's conviction must be reversed and a new trial ordered.
{¶ 13} In his last assignment, Todd challenges his sentence. He contends that the trial court erred by imposing more than the minimum sentence when he had not previously served a prison term, by imposing consecutive sentences, and by failing to advise him about post-release-control sanctions.
{¶ 14} The trial court elected to impose more than the minimum sentence in this case because it found on the record that the shortest prison term would have demeaned the seriousness of Todd's crimes and would not have adequately protected the public. These findings were all that was necessary to comply with R.C. 2929.14(B)(2).[11]
{¶ 15} In order to impose consecutive sentences, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public.[12] In addition, the sentencing court must find one of the following: (1) when the offender committed the offenses, he was awaiting trial or sentencing or was under post-release control; (2) the harm caused was so great or unusual that no single prison term would adequately reflect the seriousness of the offender's conduct; or (3) the offender's criminal history indicates that consecutive sentences are necessary to protect the public from future crime by the offender.[13] The trial court must give its reasons for imposing consecutive sentences.[14]
{¶ 16} Our review of the felony-sentencing worksheet and the transcript of the sentencing hearing demonstrates that the trial court found that consecutive sentences were necessary to protect the public or to punish Todd and were not disproportionate to the seriousness of his conduct and to the danger he posed to the public. It also found that his criminal history showed a need to protect the public. The trial court did not give its reasons on the worksheet. At the sentencing hearing, however, after discussing consecutive sentences, the trial court pointed out that Todd's record and the facts of the case demonstrated that Todd was a dangerous person and a detriment to the safety of the community. And the court went on to say that it was for the "good of society" that Todd needed to be "off the streets for a long time." We conclude that the trial court complied with the felony-sentencing requirements for imposing more than the minimum sentence and for imposing consecutive sentences. Thus, we overrule Todd's assignment as to the terms of his sentence.
{¶ 17} Todd pointed out during oral argument before this court that the trial court's oral pronouncement and its entry concerning the length of the sentence imposed for the aggravated robbery were in conflict. In its oral pronouncement, the trial court had informed Todd that he would serve an eight-year term for aggravated robbery. But in the judgment entry, the term imposed was nine years. The record also reflects that the Ohio Department of Rehabilitation and Correction has relied on the nine-year sentence to calculate Todd's release date. Both the assistant prosecuting attorney and Todd agree that the nine-year sentence was a clerical error. Unfortunately, it was the "judgment entry and not the open court pronouncement of sentence [that] was the effective instrument for sentencing."[15] Accordingly, we vacate the erroneous sentence and remand this case to the trial court so that it can correct the clerical error in an entry imposing an eight-year term of imprisonment for aggravated robbery.
{¶ 18} Todd also challenges the trial court's failure to advise him of post-release-control sanctions. The state concedes that this was not done, and the record reflects the error. The trial court was required to verbally notify Todd about the possibility of post-release control and the ramifications of violating post-release supervision or post-release-control sanctions.[16] Consequently, the remaining aspects of Todd's sentence must also be vacated and the case remanded so that the trial court can properly advise him in accordance with the requirements of R.C. 2929.19(B)(3). Thus, we sustain this portion of Todd's third assignment.
{¶ 19} Accordingly, we affirm the trial court's judgment with respect to the findings of guilt. We vacate Todd's sentence and remand this cause to the trial court to correct the aggravated-robbery sentence so that it involves an eight-year term and to properly advise Todd about post-release controls and sanctions.
Judgment accordingly.
Sundermann, P.J., and Hildebrandt, J., concur.
[1] Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712.
[2] Miller-el v. Cockrell (2003), ___ U.S. ___, ___,123 S.Ct. 1029.
[3] See id.
[4] See State v. Herring, 94 Ohio St.3d 246, 257, 2002-Ohio-796,762 N.E.2d 940.
[5] See State v. Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541, paragraph two of the syllabus.
[6] See id. at 386.
[7] State v. Jenks (1991), 61 Ohio St.3d 259-260, 574 N.E.2d 492, paragraph two of the syllabus.
[8] State v. Thompkins, 78 Ohio St.3d at 387.
[9] See id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[10] State v. Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.
[11] See State v. Edmonson, 86 Ohio St.3d 324, 326,1999-Ohio-110, 715 N.E.2d 131.
[12] R.C. 2929.14(E)(4).
[13] R.C. 2929.14(E)(4)(a) through (c).
[14] R.C. 2929.19(B)(2)(c).
[15] State v. Carpenter (Oct. 9, 1996), 1st Dist. No. C-950889.
[16] State v. Hoffert, 1st Dist. No. C-020168, 2002-Ohio-6343, ¶ 20.